IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYERS MONIGAN; and GEORGIA MONIGAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONAL PRESTO INDUSTRIES, INC.; and WAL-MART STORES, INC.,<br><br>    Defendants.              / | No. C 12-3698 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

The motion for summary judgment filed by defendants National Presto Industries, Inc. and Wal-Mart Stores, Inc. came on for oral argument on December 10, 2013. Having considered the parties' motion papers, pleadings and arguments, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment.

## BACKGROUND

This is a products liability case involving the FryDaddy® Junior electric deep fryer, manufactured by defendant National Presto and sold by defendant Wal-Mart. The following is the version of the injury producing event, according to plaintiffs Myers Monigan and Georgia Monigan.

On the night of May 15, 2012, Mrs. Monigan went to her kitchen and cooked french fries in the FryDaddy® Junior. Docket No. 39-1, Schupp Decl. Ex. A at 38:1-3, 48:20. Mrs. Monigan does not

remember if she unplugged the device when she was done.[1] *Id.* at 65:3-4. Mrs. Monigan then took the french fries to her bedroom, ate them, and went to sleep. *Id.* at 48:20-21.

Mr. Monigan had never seen the FryDaddy® Junior prior to the night of the incident. Docket No. 39-2, Schupp Decl. Ex. B at 118:20-21. Some time after Mrs. Monigan left the kitchen, Mr. Monigan went into the kitchen to get an iced tea. *Id.* at 121:17-18. The kitchen was dark and Mr. Monigan had trouble seeing because the kitchen lights were broken. *Id.* at 121:10-16, 125:15-16, 133:23. Mr. Monigan got the iced tea from the refrigerator and then saw the FryDaddy® Junior sitting on a counter. *Id.* at 121:17-18. He picked up the device to place it in a cabinet and hot oil from the deep fryer splashed on him, burning his right hand and arm. *Id.* at 121:20-122:2.

On July 16, 2012, plaintiffs filed a complaint against defendants National Presto and Wal-Mart. Docket No. 1, Compl. In the complaint, Mr. Monigan alleges causes of action for strict liability in tort and negligence, and Mrs. Monigan alleges causes of action for loss of consortium and negligent infliction of emotional distress. *Id.* ¶¶ 5-33. By the present motion, defendants move for summary adjudication of all of plaintiffs' claims. Docket No. 37.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

---

[1] The FryDaddy® Junior does not have an on/off switch. It may only be turned off by unplugging the power cord from a wall outlet. Docket No. 38, Tienor Decl. ¶ 4.

1 (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than 2 simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.* 3 *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of 4 evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for 5 the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

6 In deciding a summary judgment motion, the Court must view the evidence in the light most 7 favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. 8 "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from 9 the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* 10 However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise 11 genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 12 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

## DISCUSSION

### I.   The Parties' *Daubert* Objections

Both parties argue that the opposing expert's testimony should be excluded by the Court pursuant to Federal Rule of Evidence 702. Docket No. 37, Def.'s Mot. at 15-18; Docket No. 42, Pl.'s Opp'n at 7-8. Under Rule 702, a court may permit opinion testimony from an expert only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires that the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

"Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010).

3

"'[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Id.* at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* (citing *Daubert*, 509 U.S. at 594, 596). Whether to admit or exclude expert testimony lies within the trial court's discretion. *GE v. Joiner*, 522 U.S. 136, 141-42 508 (1997); *United States v. Calderon-Segura*, 512 F.3d 1104, 1109 (9th Cir. 2008).

Both experts are qualified to testify in the present action about the FryDaddy® Junior. *See* Docket No. 38, Tienor Decl. ¶ 2, Ex. 1; Docket No. 43-1, Rondinone Decl. Ex. 1. Both experts' testimony will assist the jury because their testimony is relevant to Mr. Monigan's product liability claims. *See Primiano*, 598 F.3d at 564 ("The requirement that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.'"). In addition, the Court concludes that the experts' testimony is based on sufficient facts and data and is the product of reliable principles and methods.[2, 3] Accordingly, the Court denies the parties' *Daubert* objections.

///

## II. Mr. Monigan's Claims for Strict Liability and Negligence

---

[2] Defendants argue that the testimony of plaintiff's expert, Dr. David Rondinone, is not based on sufficient facts and reliable methods because he did not plug in the product to see how it works. Def's Mot. at 15-16; Docket No. 46, Def.'s Reply at 5. However, this particular criticism goes to the weight, not the admissibility of Dr. Rondinone's testimony. *See Primiano*, 598 F.3d at 567 (stating that the fact that the medical expert never saw or talked to the plaintiff "might be useful to the jury as impeachment," but does not "furnish[] an adequate basis for excluding his opinion."). It is not necessary for Dr. Rondinone to turn on the device to conclude that it does not contain a visual indicator or methods that would mitigate against side forces.

Defendants also argue that Dr. Rondinone's opinion that the product is defective because it can spill oil when pulled while it is plugged in should be excluded. Def.'s Mot. at 16-17. Defendants argue that Dr. Rondinone fails to offer any alterative designs that could potentially remedy this defect. *Id.* at 17. This argument is not supported by the record. In his expert report, Dr. Rondinone lists two alternative designs that could remedy this defect: possessing a method of top containment or having a cord that easily releases when the device is pulled. Docket No. 43-2, Rondinone Decl. Ex. 2 at 3.

[3] Plaintiffs argue that the opinions of defendant's expert, Lawrence J. Tienor, should be excluded because he failed to provide plaintiffs with a signed written expert report as required by Federal Rule of Civil Procedure 26(a)(2)(B). Pl.'s Opp'n at 7-8. However, Mr. Tienor is not a retained or specially employed expert. *See* Docket No. 38, Tienor Decl. ¶ 1. Therefore, Rule 26(a)(2)(B) does not apply to him. Plaintiffs also argue that because he is employed by National Presto and his duties involve giving expert testimony he is unqualified to testify under *Daubert* and Federal Rule of Evidence 702. Pl.'s Opp'n at 7-8. This argument is not supported in the law.

4

Defendants move for summary judgment on Mr. Monigan's claims for strict liability and negligence. Def.'s Mot. at 9-18. Specifically, defendants argue that plaintiff's failure to warn theory of recovery and his design defect theory of recovery both fail as a matter of law. *Id.*

"[A] plaintiff may seek recovery in a 'products liability case' either 'on the theory of strict liability in tort or on the theory of negligence.'" *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001). A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a person. *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (1991). However, "liability for product defects, while strict, is not absolute." *Taylor v. Elliott Turbomachinery Co. Inc.*, 171 Cal. App. 4th 564, 576 (2009); *see also Anderson*, 53 Cal. 3d at 994 ("Strict liability . . . was never intended to make the manufacturer or distributor of a product its insurer."). "Under California law, strict products liability has been invoked for three types of product defects: (1) manufacturing defects, (2) design defects, and (3) 'warning defects.'" *Taylor*, 171 Cal. App. 4th at 577 (citing *Anderson*, 53 Cal. 3d at 994).

To prevail on a negligence claim, the plaintiff must show that the defendant owed him a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of his injuries. *Merrill*, 26 Cal. 4th at 477. Under a negligence theory, as opposed to strict liability in tort, the plaintiff must prove the additional element "that the defect in the product was due to negligence of the defendant." *Id.* at 479; *see also id.* at 485 ("'[S]trict products liability differs from negligence in one key respect: it obviates the need for a plaintiff to show a manufacturer knew or should have known of the risk posed by his product—i.e., whether the manufacturer acted reasonably.'")

### A. Failure to Warn

"Under the failure to warn theory, a product may be defective even though it is manufactured or designed flawlessly. '[A] product, although faultlessly made, may nevertheless be deemed "defective" under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given.'" *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1238 (2010) (citation omitted).

5

Mr. Monigan contends that defendants are liable under a failure to warn theory of recovery because the FryDaddy® Junior does not contain a warning on the fryer itself directing the user not to move the fryer when hot or plugged in, and because the warning on the cord is inadequate. Pl.'s Opp'n at 6 (citing Docket No. 43, Rondinone Decl. ¶ 9). Defendants argue, however, that causation is lacking: whatever the merits of the failure to warn theory in other circumstances, Mr. Monigan's failure to warn claim fails as a matter of law because Mr. Monigan testified that it was too dark for him to see any written warning. Def.'s Mot. at 9-10.

"[U]nder either a negligence or a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury." *Merrill*, 26 Cal. 4th at 479. Therefore, "the plaintiff must prove that the defendant's failure to warn was a substantial factor in causing his or her injury." *Huitt v. S. Cal. Gas Co.*, 188 Cal. App. 4th 1586, 1604 (2010). "The natural corollary to this requirement is that a defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings." *Id.* (explaining that the proper issue in determining causation is "whether any warning issued by the defendant would have reached the plaintiffs"). "Generally, when a warning is given, but the person to whom the warning is directed does not read the warning, there is no causation." *Altman v. HO Sports Co.*, 821 F. Supp. 2d 1178, 1188 (E.D. Cal. 2011) (citing *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 112 (2008) ("There can be no proximate cause where, as in this case, the prescribing physician did not read or rely upon the allegedly inadequate warnings promulgated by a defendant about a product.")).

Mr. Monigan testified that he had never seen the FryDaddy® Junior prior to the incident. Docket No. 39-2, Schupp Decl. Ex. B at 118:2-21. Mr. Monigan testified that during the night of the incident, the lights in his kitchen were not working and it was too dark for him to see the cord tag and read its warning. *Id.* at 121:10-16, 133:17-23, 143:9-14; *see also id.* at 125:14-16 (testifying that it was too dark for him to see how much oil was in the product). Viewing this evidence in the light most favorable to plaintiff, the defendants' alleged failure to warn was not a substantial factor in causing Mr. Monigan's injury. Even if the product contained the warnings proposed by plaintiffs, Mr. Monigan would not have seen them because it was too dark in his kitchen to read the warnings. Accordingly, the Court GRANTS summary judgment of Mr. Monigan's claims for strict liability and negligence to the

6

extent that are based on a failure to warn theory of recovery.[4]

### B. Design Defect

"[A] product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors . . . , the benefits of the challenged design do not outweigh the risk of danger inherent in such design." *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 418 (1978). These two tests are known as the "consumer expectations" test and the "risk/benefit" test. *See Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1232 (2010). Further, "[w]here liability depends on the proof of a design defect, no practical difference exists between negligence and strict liability; the claims merge." *Lambert v. General Motors*, 67 Cal. App. 4th 1179, 1185 (1998).

#### 1. Consumer Expectations Test

A product is defective under the consumer expectations test if the product has failed to perform as safely as an ordinary consumer would expect when the product was used in an intended or reasonably foreseeable manner. *Barker*, 20 Cal. 3d at 418. To establish a prima facie case of design defect under the consumer expectations test, the plaintiff generally should provide evidence "concerning (1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety." *Campbell v. General Motors Corp.*, 32 Cal. 3d 112, 127 (1982).

Defendants do not argue that Mr. Monigan has failed to present evidence related to the above three factors. Rather, defendants argue that Mr. Monigan's product liability claims fail under the consumer expectations test because ordinary consumers know that caution must be used around hot items, such as oil, in the kitchen. Def.'s Mot. at 13-14. However, viewing the circumstances surrounding the injury in the light most favorable to plaintiff, a legitimate inference could be drawn that

---

[4] Because the Court grants summary judgment of Mr. Monigan's failure to warn claims, the Court does not address defendants' alternative argument that these claims should be dismissed because there is no legal duty to warn of open and obvious dangers.

7

Mr. Monigan did not know that the FryDaddy® Junior contained hot oil prior to lifting it up. Mr. Monigan testified that he had never seen the FryDaddy® Junior prior to the incident. Docket No. 39-2, Schupp Decl. Ex. B at 118:2-21. Mr. Monigan also testified that it was dark in the kitchen, that he did not see oil bubbling inside the fryer, that there was nothing to indicate that the fryer was on, and that the fryer handle did not feel hot when he lifted it up. *Id.* at 121:10-16, 123:21-124:2, 124:3-12. Defendants argue that Mr. Monigan's testimony is not credible because test data shows that the when the FryDaddy® Junior is plugged in, with three cups of oil, and the handle is in the upright position, the plastic handle is around 180°F. Def.'s Mot. at 12. In deciding a motion for summary judgment, it is improper for the Court to make credibility determinations. *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed."). Accordingly, the Court declines to grant summary judgment of Mr. Monigan's products liability claims to the extent they rely on the consumer expectations test.

### 2. *Risk/Benefit Test*

A product is defective under the risk/benefit test if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design. *Barker*, 20 Cal. 3d at 432. The relevant factors include: "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Id.* at 431.

Defendants argue that Mr. Monigan's products liability claims fail under the risk/benefit test because plaintiffs have failed to provide any admissible expert testimony showing that the product is defectively designed and their expert has failed to show that the risks of the product's current design outweigh the benefits. Def.'s Mot. at 14-18. However, to accept defendants' argument would require misapplication of the proper burdens of proof under the risk/benefit test. "Once the plaintiff has made a prima facie showing that his or her injury was caused by the product's defective design, the burden shifts to the defendant to establish that, in light of the relevant factors, the product is not defective."

*Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1313-14 (2011).

Mr. Monigan testified that when he picked up the device while it was plugged in, hot oil splashed out. Docket No. 39-2, Schupp Decl. Ex. B at 121:20-24. Mr. Monigan also provided testimony indicating that he would not have picked up the deep fryer if it had an indicator telling him that the device was on. *See id.* at 123:21-124:2. Viewing this evidence in the light most favorable to plaintiff, Mr. Monigan has made a prima facie showing that the product's design proximately caused his injury. This shifts the burden of proof to defendant to establish that on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design. *See Barker*, 20 Cal. 3d at 431-32; *Pannu*, 191 Cal. App. 4th at 1313-14. Defendants have provided the Court with testimony from their expert stating that the deep fryer operates at too high a temperature for the device to include an indicator light. Docket No. 39-6, Schupp Decl. Ex. F. at 25:14-24. Plaintiff's expert testified that a light could be incorporated into the design of the device. *See* Docket No. 44-3, Sax Decl. Ex. 3 at 86:19-87:2. Therefore, there remains a genuine dispute of fact as to whether the benefits of not having an indicator light outweigh the risks of danger inherent in such design. Moreover, defendants have not provided the Court with any evidence showing that the benefits of not having a method of top containment or having a cord that easily releases when the device is pulled outweigh the risks of danger inherent in such design. Accordingly, the Court declines to grant summary judgment of Mr. Monigan's products liability claims to the extent they rely on the risk/benefit test.

## II.     Mrs. Monigan's Claim for Loss of Consortium

Defendants move for summary judgment of Mrs. Monigan's claim for loss of consortium. Def.'s Mot. at 19. Defendants argue that if the Court grants summary judgment of Mr. Monigan's claims for strict liability and negligence, then the Court should also grant summary judgment of Mrs. Monigan's loss of consortium claim. *Id.* "'A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse.'" *LeFiell Manufacturing Co. v. Sup. Ct.*, 55 Cal. 4th 275, 285 (2012). Because the Court declines to grant summary judgment of Mr. Monigan's claims for strict liability and negligence to the extent they are based on a design defect theory of recovery, the Court also declines to grant summary judgment of Mrs. Monigan's claim for loss of

1 consortium.

### III. Mrs. Monigan's Claim for Negligent Infliction of Emotional Distress

Defendants move for summary judgment of Mrs. Monigan's claim for negligent infliction of emotional distress ("NIED"). Def.'s Mot. at 18-19. Defendants argue that summary adjudication of this claim is appropriate because Mrs. Monigan was not in the same room as Mr. Monigan when the accident happened, and Mrs. Monigan has not presented any evidence of being severely emotionally distressed as a result of the accident. *Id.*

"[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if . . . said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress – a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Thing v. La Chusa*, 48 Cal. 3d 644, 667-68 (1989). "This is known as the 'bystander' theory of recovery." *Mealy v. B-Mobile, Inc.*, 195 Cal. App. 4th 1218, 1225 (2011) (citing *Burgess v. Sup. Ct.*, 2 Cal.4th 1064, 1071 (1992)).

The second element of the *Thing* test does not require visual perception of an impact on the victim. *Ra v. Sup. Ct.*, 154 Cal. App. 4th 142, 148 (2007). "A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative." *Bird v. Saenz*, 28 Cal. 4th 910, 916 (2002). "On the other hand, someone who hears an accident but does not then know it is causing injury to a relative does not have a viable claim for NIED, even if the missing knowledge is acquired moments later." *Id.* at 917 n.3. "[T]he plaintiff must have an understanding perception of the 'event as causing harm to the victim.'" *Fortman v. Förvaltningsbolaget Insulan AB*, 212 Cal. App. 4th 830, 841 n.4 (2013).

Mrs. Monigan testified that she was asleep in a different room during the accident and was awakened by Mr. Monigan's screams. Docket No. 44-1, Sax Decl. Ex.1 at 66:4-15. Mrs. Monigan testified that Mr. Monigan then ran into the room; she asked him "What happened?;" and Mr. Monigan replied "Hot oil fell on my arm." *Id.* at 66:16-19. Viewing these facts in the light most favorable to

10

plaintiff, Ms. Monigan's claim fails as a matter of law because she was not present at the scene of the injury-producing event at the time it occurred. When Mr. Monigan was burned by the hot oil, she was asleep in a different room. Although his screams woke her up, there is no evidence before the Court showing that Mrs. Monigan had a contemporaneous awareness that he was screaming because he had been burned by hot oil. To the contrary, Ms. Monigan testified that she asked her husband "What happened?" as soon as he ran into the room. Docket No. 44-1, Sax Decl. Ex.1 at 66:18. Therefore, summary judgment of Ms. Monigan's NIED claim is appropriate. *See Fortman*, 212 Cal. App. 4th at 845 (affirming summary judgment of a NIED claim where plaintiff "had no contemporaneous awareness of the causal connection between the company's defective product and her brother's injuries"); *Fife v. Astenius*, 232 Cal. App. 3d 1090, 1092-93 (1991) (affirming summary judgment of a NIED claim where the parents and brothers of an accident victim heard a crash, saw debris fly above the wall separating their yard from the street, and ran outside to find their injured relative still inside the damaged vehicle).

In addition, plaintiffs have failed to provide the Court with any evidence showing that Mrs. Monigan suffered serious emotional distress as a result of Mr. Monigan's injury. *Cf. Thing*, 48 Cal. 3d at 668 (explaining that "'[s]erious mental distress may be found where a reasonable [person], normally constituted, would be unable to adequately cope with the mental distress engendered by the circumstances of the case'"). Therefore, summary judgment of Mrs. Monigan's NIED claim is also appropriate based on the absence of evidence supporting the third element of the *Thing* test. *See Mealy v. B-Mobile, Inc.*, 195 Cal. App. 4th 1218, 1226 (2011) (affirming trial courts' finding of no compensable emotional distress where the plaintiff "did not describe any severe emotional reaction to witnessing his wife's fall"). Accordingly, the Court grants summary judgment of Mrs. Monigan's claim for negligent infliction of emotional distress.

///

///

///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment. Docket No. 37.

**IT IS SO ORDERED.**

Dated: December 17, 2013

SUSAN ILLSTON
United States District Judge